## MUNICIPALITY A MERE VOLUNTEER IN REPAIRING BRIDGE.

Common Pleas Court of Hamilton County.

### CITY OF CINCINNATI V. INTERURBAN RAILWAY & TERMINAL COMPANY.*

Decided, January 19, 1914.

*Bridge—Located on a Free Turnpike—Interurban Railway Company Liable for Repairs Under Contract with County Commissioners— Locality of Bridge Annexed to City, Which Made Repairs—But in so Doing Was a Mere Volunteer and Can Not Recover Cost of Repairs from Interurban Company.*

1. The duty of repairing bridges over streams on free turnpikes and county roads is, under the provisions of Section 2421 and Section 7557, General Code, vested entirely in the county commissioners, and the county commissioners being chargeable with this duty can not be relieved by the annexation of the territory in which such bridge exists by a municipal corporation, and when, by contract with the county commissioners, an interurban railway company using that bridge agrees to perform, at the instance and direction of the county commissioners, this duty of repair, the county commissioners alone can determine when the necessity for such repair exists and alone can enforce the contract, notwithstanding the annexation of the territory.

2. Section 3714, General Code, prescribing the statutory duty of a municipality with reference to bridges, streets, highways, etc., within the municipality, is not in conflict with Section 2421 of the General Code and its kindred section, 7557, General Code.

3. Where a municipal corporation, after annexation of the territory containing such a bridge as is provided for in Section 2421 and Section 7557, General Code, undertakes to repair the bridge after notice to an interurban railway company using said bridges, which, by the terms of its franchise granted by the county commissioners, is compelled to keep in repair when notified of the necessity thereof by the said county commissioners, the said municipal corporation will be regarded as a mere volunteer and will not be permitted to recover the cost of repairing said bridge.

*Reversed by the Court of Appeals, *Cincinnati* v. *Interurban Ry. Co., Court Index,* August 16, 1915.

Judgment of the Court of Appeals reversed and that of the Common Pleas affirmed by the Supreme Court without report, May 18, 1916.

*Dinsmore & Shohl,* for the demurrer.
*Coleman Avery,* Assistant City Solicitor, contra.

GEOGHEGAN, J.

Heard on demurrer to petition.

This is an action brought by the city of Cincinnati to recover from the defendant, the Interurban Railway & Terminal Company, the sum of $1,587.05, by reason of certain repairs made by said city upon a certain bridge over the Little Miami river, which repairs the plaintiff claims should have been made by the defendant company. The facts as they appear upon the face of the petition, upon which this claim is based, are in substance as follows:

On March 27, 1901, the Cincinnati & Eastern Electric Railway Company obtained a franchise to construct, maintain and operate, for a term of twenty-five (25) years, an electric railway upon the Columbia & New Richmond turnpike from the corporation line of the city of Cincinnati, as it then existed, to the boundary line between Hamilton and Clermont counties. One of the terms and conditions of said franchise was as follows, to-wit:

"9th. The said the Cincinnati & Eastern Electric Railway Company, its successors and assigns, hereby agree as a consideration for this grant and franchise, to maintain, repair, and rebuild whenever necessary, during the life of this grant, all of the bridges and culverts, over the route herein specified upon which it may place and maintain its tracks, at its own cost and expense, and under the direction of the county engineer and county commissioners; the maintenance of said bridges shall include their approaches, abutments and floors, together with the painting of the iron work, and shall be done at such times as the board of county commissoners may deem necessary."

The defendant herein became the assignee, under a consolidation agreement, of the franchise of the Cincinnati & Eastern Electric Railway Company, and therefore became liable for the performance of the contracts of the Cincinnati & Eastern Electric Railway Company, especially the contract to repair, maintain and rebuild bridges and culverts, as above set forth.

It is further stated in the petition that the city of Cincinnati, by annexation proceedings, annexed the territory embracing that portion of the Columbia & New Richmond turnpike where it crossed the Little Miami river by bridge, over which the defendant company operated its cars; that by virtue thereof the city of Cincinnati succeeded to the rights of the county commissioners to compel the defendant to keep the bridge over the Little Miami river in repair as provided in the franchise; that the bridge became out of repair; that the city of Cincinnati notified the defendant company; that the defendant company neglected to make the repairs; that the bridge became dangerous for, and a menace to, public travel thereon, and that therefore the city, upon the failure of the defendant company to comply with said notice to make necessary repairs, did make the repairs at a cost of $1,587.05, which it now seeks to recover from the defendant railway company.

The demurrer is based upon the theory that the city of Cincinnati was not charged in law with the maintenance and repair of a bridge such as is described in the petition, and that the city of Cincinnati, in making the repairs, was a mere volunteer and hence can not recover.

This proposition is based upon the theory that Section 2421, General Code, provides that:

"The commissioners shall construct and keep in repair necessary bridges over streams and public canals on state and county roads, free turnpikes, improved roads, abandoned turnpikes and plank roads in common public use, except only such bridges as are wholly in cities and villages having by law the right to demand, and do demand and receive part of the bridge fund levied upon property therein. If they do not demand and receive a portion of the bridge tax, the commissioners shall construct and keep in repair all bridges in such cities and villages. The granting of the demand, made by any city or village for its portion of the bridge tax, shall be optional with the board of commissioners."

This section is found in Title X, Div. II, Chap. 1, of the General Code, caption "County Commissioners," sub-caption "Bridges."

It is claimed that under this section, as well as a kindred section known as Section 7557, General Code, under Title IV, Chap. 14, caption "Bridges," which is in effect and language practically the same as Section 2421 above quoted, the duty of repairing bridges over streams on free turnpikes and county roads, such as the Columbia & New Richmond turnpike is conceded to be for the purposes of this demurrer, is vested entirely in the county commissioners, and that therefore the county commissioners being chargeable with the duty of repairing such bridges they can not be relieved of that duty by the annexation of the territory in which the bridge exists, by a municipal corporation, and when by contract with the county commissioners an interurban railway company using that bridge agrees to perform at the instance and direction of the county commissioners the duty of repair, the county commissioners are the only ones who can determine when the necessity for such repair exists and are the only ones who can enforce that contract notwithstanding the annexation of the territory.

It seems that this view is tenable.

It will be observed that the statute provides that the duty is upon the county commissioners, except where bridges are wholly in cities having by law the right to demand and do demand and receive part of the bridge fund levied upon property therein. However, it is practically conceded that under the present state of the law no city or village in the state of Ohio has by law the right to demand a part of the bridge fund.

Prior to the passage of the General Code, there existed in the statutes of Ohio a section known as Section 2824, Revised Statutes, which provided in substance that the county commissioners at their March and June sessions might levy a tax for road and bridge purposes in the various counties of the state, in a rate apportioned according to the taxable value of the property of the county, and provided further that a portion of said fund collected in Hamilton county should be paid into the city treasury of Cincinnati and expended by the board of administration of said city for the purpose of building and repairing bridges within the corporate limits where the board of legislation de-

manded it. This latter portion of the statute providing for the payment to the city of Cincinnati was framed in that kind of language which the Supreme Court of this state declared to be arbitrary classification of municipalities. *State, ex rel,* v. *Jones,* 66 Ohio State, 453; *State, ex rel,* v. *Beacom,* 66 Ohio State, 491.

Section 2824, Revised Statutes, is now known as Section 5635 of the General Code. An examination of Sections 5635 and 5636, General Code, discloses the fact that all the amendments to original Section 2824, Revised Statutes of Ohio, which came within the inhibition of arbitrary classification referred to above have been dropped by the codifiers, upon the theory, I assume, that the rule laid down in the cases last referred to rendered those parts of that original section unconstitutional. So, it is clear that the city of Cincinnati has no right to demand in law a portion of the bridge fund.

The city solicitor claims that the city had the right to make these repairs because of the duty imposed upon the city by the provisions of Section 3714, General Code, formerly known as Section 2640, Revised Statutes.

This section is well known and prescribes the statutory duty of the municipality with reference to bridges, streets, highways, etc., within the limits of the municipality. It is in substance as follows:

" * * * The council shall have the care, supervision and control of public highways * * * bridges, aqueducts and viaducts, within the corporation, and shall cause them to be kept open, in repair and free from nuisance."

However, I do not think that it can be claimed that this section is in conflict with Section 2421 of the General Code. In the latter section the duty of repairing bridges on turnpikes or county roads, even though within the municipality, is placed upon the county commissioners. The duty of seeing that they are kept open, in repair and free from nuisance is upon the council of the city or village.

While the city may be liable for the failure to properly guard or give notice of the defective condition of a bridge, in so far

as the question of repair is concerned, the county commissioners having by law the definite and fixed authority to levy taxes for the repair of bridges, it must be their duty to expend the money received from such levy in the repair of bridges that are properly placed within their jurisdiction by the provisions of Section 2421, General Code.

In *Perry County* v. *Railroad Company,* 43 Ohio State, 451, it was held that the county commissioners of Perry county had the right to bring an action and recover damages for the expense of repairing a bridge within the corporate limits of the villiage of Somerset, in said county, that had been destroyed by the railroad company, for the reason that said bridge was upon a county road and the village of Somerset had not received a part of the bridge fund raised by the county commissioners by tax levy.

This case distinguishes the case of *Railroad Co.* v. *Commissioners,* 35 Ohio State, 1, relied upon by the city solicitor, by showing that the case in 35 Ohio State involved the question of obstruction of a state or county road within the corporate limits of a municipal corporation and that therefore the county commissioners could not maintain an action for the obstruction of that part of a highway which is within the limits of the corporation, the real distinction being that the county commissioners, under the act of 1873, were entitled to recover damages for the obstruction of county roads and were compelled by law to appropriate the damages recovered in repairing the road or removing the obstruction, but as the control of highways in the corporation is confided to the corporate authorities, the commissioners could not apply such moneys within the corporate limits.

In *Piqua* v. *Geist, a Minor,* 59 Ohio State, 163, the city of Piqua attempted to obtain damages because of a personal injury judgment that had been obtained by reason of a defective bridge within the corporate limits of Piqua. The Supreme Court denied the relief sought against the county commissioners for the reason that it was not shown that the bridge upon which the injuries occurred was part of a state or county road and that therefore the duty to keep such bridge in repair was upon the city of Piqua.

The cases of *Mooney* v. *St. Marys,* 15 C. C., 446; *Newark* v. *McDowell,* 16 C. C., 556, and *Newark* v. *Jones,* 16 C. C., 563, clearly distinguish between the liability of the municipal corporation for failure to guard against dangers on bridges within its limits and the duty of the county commissioners to keep in repair bridges over streams and public canals which constitute part of county roads, and I think in the main support the distinction that I have referred to above.

I have carefully examined the statutes providing for annexation of territory to municipal corporations and in no place can I find that the city in any manner succeeds to the duty of the county commissioners to repair roads and bridges of the character of the one described in this petition. If that be true, certainly the city can not succeed to rights under a contract whereby, in consideration of a franchise granted, the company receiving the franchise agrees to bear the expense of repairing bridges that the county commissioners are charged by law to repair.

Therefore it seems to me, in the absence of express statutory authority upon this subject, that the action of the city in repairing this bridge was the action of a mere volunteer and that the defendant company has and had at the time a right to insist that the county commissioners should determine whether or not the necessity for the repairs existed, in accordance with the terms of its contract entered into with the said county commissioners.

The demurrer will therefore be sustained.